UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN A. DECK,

    Plaintiff,                                      Civil Action No. 05-70189

v.                                              HON. DENISE PAGE HOOD
                                                 U.S. District Judge
                                                 HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL           U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## **REPORT AND RECOMMENDATION**

Plaintiff John A. Deck brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits (DIB) under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). I recommend that Plaintiff's Motion for Summary Judgment be DENIED and that Defendant's Motion for Summary Judgment be GRANTED.

## **PROCEDURAL HISTORY**

On January 16, 2002, Plaintiff filed an application for DIB, alleging disability as of February 1, 2001 due to congenital pancreatitis (Tr. 47-49, 58). After the initial denial of his claim on March 14, 2002, Plaintiff then filed a timely request for an administrative hearing, conducted on June 17, 2003 in Oak Park, Michigan before Administrative Law Judge (ALJ)

Henry Perez (Tr. 33-35, 249). Plaintiff, represented by non-attorney representative Denise Kamisar, testified (Tr. 251-260). Vocational Expert (VE) Peter Fotiu also testified (Tr. 260-268). ALJ Perez found that Plaintiff was not disabled because although unable to perform his past relevant work, he could perform other work which existed in significant numbers in the national economy (Tr. 25).

On November 18, 2004, the Appeals Council denied review (Tr. 6-8). Plaintiff filed for judicial review of the final decision on January 19, 2005.

## BACKGROUND FACTS

Plaintiff, born January 30, 1963, was age forty when the ALJ issued his decision on October 30, 2003 (Tr. 25). He holds a Bachelor's degree in engineering (Tr. 18). Before Plaintiff's onset of disability he worked for Daimler-Chrysler as an engineer (Tr. 18). Plaintiff alleges disability based on congenital pancreatitis and depression resulting from his physical impairment. *Plaintiff's Brief* at 1.

### A.    Plaintiff's Testimony

Plaintiff testified that he currently weighed approximately one hundred and sixty-five pounds, estimating that he had lost twenty to twenty-five pounds since becoming disabled (Tr. 252). He reported that until his last day of work on February 1, 2001 he had been employed by Daimler Chrysler as an engineer (Tr. 252-253). He indicated that abdominal pain and fatigue obliged him to quit working (Tr. 252). He reported that he also experienced cramps and bloating, testifying that he relieved his symptoms by lying in bed for approximately three hours each morning and two shorter naps at some point during the rest

of the day (Tr. 253-254).

Plaintiff estimated that he could walk for a maximum of twenty minutes and sit for a maximum of one hour (Tr. 254). He stated that he lifted five-pound weights for exercise for approximately five minutes each day, but could lift a maximum of twenty to thirty pounds if performed only on a rare basis (Tr. 254). He reported that any prolonged physical activity caused nausea and fatigue, adding that his physical limitations created depression (Tr. 255). He attributed his inability to work in part to confusion and lack of concentration caused by fatigue (255). He indicated that as a result of his illness he had a lower tolerance for stress (Tr. 256).

Plaintiff reported that he grocery shopped once a week, stating that he limited his excursions to twenty to thirty minutes (Tr. 257). He stated that activities requiring even minimal exertion created fatigue, reporting that he was unable to perform any household chores other than laundry (Tr. 257). He testified that his condition obliged him to eat a series of small meals throughout the day rather than three large ones, adding that he was unable to eat either fruits or vegetables despite taking digestive enzymes prescribed by his primary care physician (Tr. 257-258). He denied receiving mental health treatment, stating that he attempted to stave off the effects of depression "on a day-to-day basis." He estimated on a scale of one to ten, that he regularly experienced a discomfort level of three to four, adding that for approximately an hour each day that he experienced pain levels of seven to eight (Tr. 280). He stated that due to hunger and pain, he had not experienced an uninterrupted night of sleep in several years (Tr. 260).

**B.     Medical Evidence**

In July, 1998, Plaintiff sought medical treatment for lower back pain (Tr. 175). Timothy Dickson, M.D., prescribed Naprosyn and Flexeril (Tr. 174). Plaintiff again sought treatment in October of the same year, complaining of left shoulder problems (Tr. 173). An X-ray showed no abnormalities (Tr. 172, 173). In March, 2000, Plaintiff reported stomach pains and cramps with increasing frequency (Tr. 166). Exam notes indicate that Plaintiff experienced temporary relief after reducing his intake of fatty foods (Tr. 163). Tests performed the following month showed negative results for pancreatitis (Tr. 98, 161). The same month, Elliot Fraiberg, M.D., performing exploratory surgery which found evidence of a hiatal hernia, noted that Plaintiff admitted to treating staff that he used street drugs occasionally (Tr. 179). In June, 2000 Plaintiff underwent exploratory surgery at St. Joseph Mercy-Oakland (Tr. 105). Dr. Fraiberg opined that his findings raised "the question of incomplete pancreas divisum" (Tr. 106). The next month, Glen Lehman, M.D., found that ERCP films, along with CT scans showed routine pancreas divisum, suggesting "minor papilla therapy" (Tr. 107).

In September, 2000, Plaintiff was referred to University of Michigan gastroenterology specialist Grace H. Elta, M.D., who performed a sphincterotomy and pancreatic duct stent replacement (Tr. 128). One day later, Plaintiff sought emergency treatment after vomiting blood repeatedly (Tr. 108). After receiving a diagnosis of acute pancreatitis, he requested discharge from the hospital against medical advice (Tr. 111). Subsequent examination notes by Dr. Elta, observing that Plaintiff did not respond favorably to either pancreatic

sphincterotomy or temporary pancreatic duct stent placement, stated that his "only option" was "medical management and continued avoidance of alcohol" (Tr. 118-122). Plaintiff continued to report pain and fatigue throughout the same year (Tr. 142-154).

In January, 2001 Dr. Elta noted that Plaintiff had requested Sandostatin therapy which required thrice-daily subcutaneous injections (Tr. 115). Dr. Dickson's notes from a February, 2001 appointment indicate that Plaintiff reported experiencing continuing symptoms of chronic pancreatitis, complaining of continuing fatigue and lower abdominal pain (Tr. 155). The same month, Plaintiff underwent a consultive examination performed at Indiana University by Dr. Lehman, who noted that Plaintiff took Darvocet intermittently and admitted to daily marijuana use for pain control (Tr. 134). In May, 2001, gastrointestinal specialist S. Al-Hadidi, M.D., advised Plaintiff to continue Creon and Librax for irritable bowel syndrome (Tr. 195). Plaintiff told Dr. Al-Hadidi that he suffered from diarrhea occasionally and did not experience nausea or vomiting "as long as he is monitoring his diet" (Tr. 195). In October, 2001, Dr. Frailberg, M.D., opined that Plaintiff's chronic pancreatitis failed to "explain his profound fatigue" (Tr. 198). Noting that Plaintiff stated that he did not "have enough pain where he thinks a celiac block would be helpful," Dr. Frailberg observed that his condition had remained stable for the past eighteen months (Tr. 198). In November, 2001, gastrointestinal specialist G. Krishna Kumar, M.D., found "[c]hronic relapsing pancreatitis either caused by ductal abnormality due to scarring, secondary to past alcohol intake; or congenital ductale abnormality," noting however that "the reason for [Plaintiff's] claimed fatigue whenever he starts working is not clear but may be related to recurrent

pancreatitis," opining that psychiatric evaluation would be appropriate (Tr. 138-139).

In March, 2002, a Residual Functional Capacity Assessment performed on behalf of the Social Security Administration (SSA) found that Plaintiff retained the ability to lift ten pounds occasionally and less than ten pounds frequently; stand for two hours and sit for six hours in an eight-hour workday; and retained a limited ability to push or pull in the upper extremities (Tr. 90-97). The report found further that Plaintiff was limited to only occasional climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 92). Plaintiff's manipulative capacities were limited by the ability to perform handling and fingering frequently, and precluded all exposure to hazards such as machinery and heights (Tr. 93-94). The report concluded by stating Plaintiff's medical reports supported a sedentary Residual Functional Capacity (RFC).

In May, 2002, Dr. Dickson completed a Fatigue Questionnaire, rating Plaintiff's fatigue as "moderately severe," noting that Plaintiff's complaints of fatigue were "perhaps" consistent with his clinical findings (Tr. 204). He found that fatigue interfered with Plaintiff's ability to complete tasks in a timely manner "frequently," opining that stress "probably" contributed to severity of symptoms and would interfere with his ability to maintain "reliable attendance in a work setting" (Tr. 204). Dr. Dickson concluded his assessment by commenting that "[p]rofound fatigue is not usually a symptom of chronic pancreatitis, but it may be a symptom" (Tr. 204). A Pain Questionnaire completed in September, 2002 indicated Plaintiff suffered from moderately severe pain which interfered with his ability to complete tasks "frequently" (Tr. 205). The same month, he found that

Plaintiff required "complete freedom to rest frequently without restriction" (Tr. 206). Likewise, he deemed Plaintiff "incapable of sedentary work [] on a sustained and full-time basis" as a result of his exertional limitations (Tr. 207).

In October, 2002, Edward A Czarnecki, Ph.D., performed a consultive psychological evaluation of Plaintiff (Tr. 220-229). Plaintiff reported that his diet restrictions, along with chronic fatigue, pain and lifestyle changes had been "devastating" (Tr. 220). He denied depression, but stated that he had experienced financial problems due to the inability to work (Tr. 221). Dr. Czarnecki reported that Plaintiff's "presentation was consistent and credible" (Tr. 221). Opining that Plaintiff's "extraordinary obsession with diet and pain" was a manifestation of feelings of helplessness in the face of his physical problems, Dr Czarnecki diagnosed him with a major depressive disorder and an anxiety disorder (Tr. 223). He assigned Plaintiff a GAF of 40[1], finding that he experienced "marked" limitations in his activities of daily living; social functioning; and maintaining concentration, persistence, or pace (Tr. 223). He found further that Plaintiff possessed only a poor to fair ability to make occupational adjustments (Tr. 228-229).

In July, 2003, Wladimir Zarski, M.D., performed a Psychiatric Consultative Examination on behalf of the SSA (Tr. 242-246). Plaintiff expressed frustration that he could no longer work, reporting that he smoked marijuana frequently to combat his loss of appetite

---

[1] A GAF score of 31-40 indicates "[s]ome impairment in reality testing or communication ... or major impairment in several areas, such as work, school, family relations, judgment, thinking or mood." *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ), 34 (4th ed.2000).

(Tr. 242). Dr. Zarski, finding that Plaintiff experienced an adjustment disorder with depressed mood and cannabis abuse, assigned Plaintiff a GAF of $60^2$ (Tr. 244).

### C.     Vocational Expert Testimony

VE Peter Fotiu classified Plaintiff's former job as an automotive engineer employed at Daimler Chrysler as skilled, at the heavy level of exertion (Tr. 263). He found that Plaintiff possessed skills transferable to the light level of exertion (Tr. 264). ALJ Perez posed the following question to the VE:

> "Taking [Plaintiff's] age, education, and work experience into account, assume that such a person has an exertional limitation of lifting ten pounds occasionally, less than ten pounds frequently. We impose further limitations of jobs that would provide for sitting six hours, standing/walking two hours, limited in pushing and pulling, frequent handling, fingering bilaterally. Occasional climbing, balancing, stooping, crouching, kneeling, and crawling[,] moving machinery, and driving. And if we put this individual at the skilled level, could such a person be expected to perform Claimant's past work?"

(Tr. 264). The ALJ added following limitations:

> **"**Now if we use the same limitations that I just previously indicated, but we add jobs that would provide for routine production and stress, simple job assignments, and occasional contact with the public, and we have to put this individual at the unskilled level, could such a person be expected to perform [Plaintiff's] past relevant work?"

(Tr. 265). The VE testified that given the above limitations, Plaintiff would be unable to perform his former work at either the heavy or light levels of exertion (Tr. 265). He found

---

$^2$A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ), 30 (4th ed.2000).

that Plaintiff could perform a range of unskilled work at the sedentary level, including work as a machine tender, visual inspector, and assembler (Tr. 265). He stated that approximately 9,000 such jobs existed in the State of Michigan and 300,000 in the national economy (Tr. 265). The VE indicated that even if the ALJ found Plaintiff's allegations of exertional limitations wholly credible he could still perform the jobs listed above (Tr. 266). However, he added that Plaintiff would be unable to perform any full time work if his complaints of non-exertional limitations such as pain and fatigue were fully credited (Tr. 266). The VE stated that his responses to the hypothetical questions were consistent with the information found in the Dictionary of Occupational Titles (DOT) (Tr. 266).

### D.  The ALJ's Decision

Citing Plaintiff's medical records, ALJ Perez found the severe impairments of chronic pancreatitis with irritable bowel syndrome; depression; anxiety; cannabis and street drug abuse; and a history of alcohol abuse (Tr. 21). Nonetheless, he determined that although these conditions were "severe" under 20 CRF § 404.1520(c), Plaintiff did not experience a severe impairment or combination of impairments that met or equaled any impairment listed in Appendix 1, Subpart P, Regulations No. 4 "including sections 5.08, 12.04, 12.06, and 12.09" (Tr. 21). He found that while Plaintiff was unable to perform any past relevant work as an engineer which entailed performing skilled work at the heavy level of exertion, he retained the residual functional capacity to perform a range of unskilled, sedentary work, including jobs as a machine tender, visual inspector, and assembler, finding that 5,000 such jobs existed in southeastern Michigan and 9,000 throughout the state (Tr. 23-25).

ALJ Perez found Plaintiff's allegations of disability "not totally credible," noting that laboratory tests showed "no significant abnormalities" (Tr. 22). He supported his credibility determination further by citing the absence of mental health treatment, the lack of hospitalization, and medical records which indicated that Plaintiff's condition remained stable (Tr. 22).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

**FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

**ANALYSIS**

**A.     Credibility[3]**

---

[3] Plaintiff submits three arguments in favor of remand.  First, he maintains that the administrative decision should be remanded based on the ALJ's faulty credibility determination; next, because the RFC composed by the ALJ overstated his true capacities; and finally, because the ALJ's job conclusions, ostensibly drawn from the vocational testimony, reflect an improperly selective reading of the record.

Plaintiff's three claims (including a sub-argument which states that the ALJ erred by declining to give controlling weight to the treating physician's disability opinion) are premised on the theory that substantial evidence does not support the ALJ's conclusions.  In

Plaintiff argues first that the ALJ improperly discounted his allegations that fatigue and pain obliged him to lie down for several hours each day. *Plaintiff's Brief* at 10. Citing *Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986), he maintains that having established the underlying medical condition of acute pancreatitis, the evidence of record also supports his alleged degree of limitation. *Brief* at 10-14.

*Social Security Ruling* (SSR) 96-7p states that it is not sufficient for the ALJ to make a single, conclusory statement that the individual's allegations have been considered or that the allegations are or are not credible. *Id*, 1996 WL 362209, at 34484.  The ALJ's decision must be based on specific reasons for the findings of credibility.  *Id*.  These reasons must be supported by substantial evidence in the record. *Howard v. Commissioner of Social Security,* 276 F.3d 235, 242 (6th Cir. 2002); *Heston v. Commissioner of Social Security,* 245 F.3d 528, 536 (6th Cir. 2001); *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994).

Likewise, the ALJ's credibility determination is guided by SSR 96-7p which also describes a two-step process for evaluating symptoms. *See Duncan, supra*.  "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment...that can be shown by medically acceptable clinical and laboratory diagnostic techniques . . ." *Id*.  Second, SSR 96-7p mandates that:

> "once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been

---

large part, all three arguments in support of remand draw repeatedly on the same portions of the transcript.  For the sake of brevity, the Court will not revisit previously addressed material in the second and third sections of the analysis.

shown, the adjudicator must evaluate the intensity, persistence, and limited effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." *Id.*

C.F.R. §404.1529(c)(3) lists the factors to be considered in making a credibility determination, including daily activities, "precipitating and aggravating factors," treatment received for relief of symptoms, and additional considerations relevant to functional limitations. 20 C.F.R. § 404.1529(c)(3).

As a general rule, the courts cede enormous latitude to the ALJ's credibility determinations. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993). In general, the ALJ's finding is entitled to deference by the reviewing court. *Richardson, supra,* 402 U.S. at 401. In reviewing the findings of the ALJ, the evidence must be reviewed as a totality, examining the record as a whole. *Mowery v. Heckler,* 771 F.2d 966, 970 (6th Cir. 1985).

Although Plaintiff's diagnosis of pancreatitis satisfies the first step of the *Duncan* test, substantial evidence, properly culled from the record and discussed at length in the administrative decision, supports the ALJ's rejection of the type and severity of symptoms alleged by Plaintiff, thus failing the second portion of the same test. The ALJ, while acknowledging Plaintiff's condition was confirmed by medical testing, pointed out that Plaintiff's diagnosis did support the degree of limitation that he alleged. The decision cites

Dr. Dickson's May, 2002 comment that the "profound fatigue" alleged by Plaintiff was "not usually a symptom of chronic pancreatitis" and his notes from the same month describing Plaintiff's abdominal pain as "mild"(Tr. 20 *citing* 204, 240). The ALJ noted further that a mental status examination performed by Dr. Zarski in July, 2003 indicated that Plaintiff was able to sit comfortably for the duration of the exam and did not exhibit "significant difficulties with attention, concentration, or memory." (Tr. 20 *citing* 243). The ALJ commented that Dr. Zarski assigned Plaintiff a GAF of 60, which indicated, at most, only moderate difficulties in occupational and social functioning (Tr. 20 *citing* 244).

Additional record evidence supports the ALJ's credibility determination. Plaintiff told Dr. Al-Hadidi in May, 2001 that he avoided frequent diarrhea, nausea or vomiting by following a low-fat diet (Tr. 195). Dr. Frailberg's October, 2001 exam notes indicate that Plaintiff's diagnosis of chronic pancreatitis failed to account for his allegations of fatigue (Tr. 198). Dr. Elta stated in October, 2001 that she had refused Plaintiff's request to write an opinion of disability (Tr. 122). Likewise, the following month, Dr. Kumar reported that he could not find a clear correlation between the diagnosis of pancreatitis and Plaintiff's "claimed fatigue whenever he starts working" (Tr. 139). The ALJ's credibility determination, properly articulated and supported by ample record evidence, does not contain grounds for a remand.

### B.     RFC[4]

---

[4]ALJ Perez found that Plaintiff retained "the residual functional capacity to perform a limited range of sedentary work, as sedentary is defined in the regulations, with the

Plaintiff argues next that the RFC composed by ALJ Perez did not take into account all of the limitations created by his condition. *Plaintiff's Brief* at 14. In addition to arguing that his professed level of disability should have received additional weight, he cites *Harrison's Principles of Internal Medicine* description of epigastric pain, which states that "[o]ften, the pain is severe enough to necessitate the frequent use of narcotics." *Id.* at 15. He also alleges that the ALJ impermissibly rejected his treating physician's opinion that he was disabled, stating that "not one physician who has examined and/or treated this claimant, ...provides any contradictory evidence relative to the claimant's pancreatitis." *Id.*

An RFC describes an individual's residual abilities. *Howard v. Commissioner of Social Security,* 276 F.3d 235, at 239 (6th Cir. 2002). "RFC is to be an 'assessment of [Plaintiff's] remaining capacity for work' once [his] limitations have been taken into account." *Id.* (*quoting* 20 C.F.R. § 416.945). It is measured by a common sense approach viewing Plaintiff's conditions as a whole. *Paris v. Schweiker,* 674 F.2d 707, 710 (8th Cir. 1982). In determining a person's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability. 20 C.F.R. § 404.1545(a)(RFC must be based on all relevant evidence).

This argument fails for a number of reasons. First, as discussed in section **A.**, record

---

following specific functional limitations: can lift less than 10 pounds frequently, 10 pounds occasionally; can sit for 6 hours of an 8-hour workday, stand/walk for 6 hours of an 8-hour workday; can perform postural activities occasionally; can frequently use his bilateral upper extremities (sic) for frequent handling and fingering activities; should avoid all exposure to heights/machinery; and requires simple job assignments with routine production/stress and occasional contact with the public (Tr. 24-25).

evidence found throughout the transcript stands at odds with Plaintiff's allegation that his symptoms from pancreatitis prevented him from working. Second, while Plaintiff cites *Harrison's Principles of Internal Medicine* description of epigastric pain to establish that his condition can cause "persistent, deep-seated, and unresponsive . . ." discomfort, several of Plaintiff's examining physicians, referring specifically to his diagnosis of pancreatitis, rather than *Harrison's* more generic description of "epigastric pain," expressed doubt that his allegations of disability were attributable to pancreatitis. Further, portions of Plaintiff's medical records indicate that *he* did not even believe that his level of discomfort justified more aggressive treatment. Seven months after the alleged onset of disability, Plaintiff told Dr. Frailberg that he did not "have enough pain where he thinks a celiac block would be helpful" (Tr. 198).

Finally, Plaintiff's argument that the treating physician's disability opinion should have received controlling weight fails. Although *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (footnote 7) (6th Cir. 1991) mandates "complete deference" to a treating physician's uncontradicted opinion, evidence contradicting Dr. Dickson's September, 2002 disability opinion, well cited by the ALJ, is found throughout Plaintiff's medical records.[5] Further, although the treating physician's opinion, even if contradicted,

---

[5]While Plaintiff asserts that none of his physicians "provides any contradictory evidence relative to the claimant's pancreatitis," such an observation misses the point. While none of Plaintiff's care providers dispute the actual diagnosis, several physicians opined that his alleged symptoms were uncharacteristic of the diagnosis and none of his treating physicians other than Dr. Dickson found that he was permanently disabled. Indeed, Dr. Elta explicitly refused Plaintiff's request to find him disabled (Tr. 122).

must be acknowledged and discussed in the administrative opinion, the ALJ is not bound to adopt a treating physician's which stands contradicted by other sources. *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544  (6th Cir. 2004).[6]

### C.     Vocational Testimony

Plaintiff argues that the ALJ's finding that he could perform a range of sedentary work reflects an impermissibly selective reading of the VE's testimony and medical evidence. *Plaintiff's Brief* at 17-18.  He quotes a portion of the VE's testimony which states that his pain and fatigue preclude him from gainful employment. *Id.*, *citing* Tr. 266.  He argues further that the ALJ erred by omitting the portion of the March, 2002 Residual Functional Capacity Assessment which found that he retained only a limited ability to handle and finger. *Id.* at 17, *citing* Tr. 93.  Plaintiff again maintains that Dr. Dickson's disability opinion that he "required complete freedom to rest," should have been adopted by the ALJ.

First, Plaintiff's argument that the VE found him disabled amounts to a distortion of the record.   The VE's statement that pain and fatigue prevented Plaintiff from working, is

---

[6]In *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004) the court held that if controlling weight could not be accorded to the treating physician's opinion, the ALJ must consider various factors in allotting weight such as "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source" and must "give good reasons" for not giving weight to a treating physician in the context of a disability determination." *Id.*; 20 C.F.R. §404.1527(d)(2) (2004).  As discussed by the ALJ, Dr. Dickson's disability opinion, contradicted by the observations of other treating physicians, appeared to be based wholly on Plaintiff's "subjective complaints" (Tr. 22).

conditioned by the ALJ's prefacing question in which he asked the VE to testify to job availability "*if I find [Plaintiff's] testimony to be credible*" (emphasis added). As discussed in section **A.**, the ALJ justifiably found that Plaintiff's allegations were *not* entirely credible. Likewise, Plaintiff's argument that the ALJ failed to adopt the Residual Functional Capacity Assessment limitations for handling and fingering is without merit. The hypothetical question posed by the ALJ, which served as a basis for his testimony that Plaintiff could perform the jobs of machine tending, visual inspection, and assembly jobs, included the assessment's finding that Plaintiff retained an ability to handle and finger which was only mildly limited (Tr. 264). Finally, as discussed at length in section **B.**, the ALJ properly articulated his reasons for rejecting Dr. Dickson's opinion, supporting his findings with ample record evidence.

While Plaintiff cites some material found in the transcript which supports his argument for disability, the overriding question in this appeal is whether the ALJ's decision was supported by substantial evidence. Were this a de novo review I might have found differently. However, the fact that I might draw a different conclusion from these facts is of no import. Based on a review of this record as a whole, the ALJ's decision is within the "zone of choice" accorded to the fact-finder at the administrative hearing level, *Mullen v. Bowen*, *supra*, and should not be disturbed by this Court.

## **CONCLUSION**

For the reasons stated above, I recommend that Plaintiff's Motion for Summary Judgment be DENIED and that Defendant's Motion for Summary Judgment be GRANTED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: January 10, 2006

CERTIFICATE OF SERVICE

-19-

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 10, 2006.

                                                S/G. Wilson
                                                Judicial Assistant